IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ARTHINE KNEZOVICH,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security Administration,<br><br>　　　　Defendant. | Case No. 2:08-CV-269-SA<br><br><br>**MEMORANDUM DECISION AND ORDER** |

Before the court is an action filed by Plaintiff, Arthine Knezovich, asking the court to reverse the final agency decision denying her application for Supplemental Security Income (hereafter "SSI") under Title XVI of the Social Security Act. *See* 42 U.S.C. §§ 1381-83c.  Plaintiff now challenges the decision of the Administrative Law Judge (hereafter "ALJ") by arguing that it is legally erroneous and not supported by substantial evidence.

Having carefully considered the parties' memoranda and the complete record in this matter, the court concludes that the ALJ's decision is supported by substantial evidence and is free of reversible legal error, and, therefore, is affirmed.

## BACKGROUND

Plaintiff protectively applied for SSI on June 23, 2004, alleging an inability to work due to lupus, Crohn's disease, an autoimmune disorder, rheumatoid arthritis, and Graves' disease. (Docket Entry #7, the certified copy of the transcript of the entire record of the administrative proceedings relating to Arthine Knezovich (hereafter "Tr. __") 75-78.)  She later alleged that she also suffered from a "cognitive impairment."  (Docket Entry #14, Plaintiff's Brief, at 17-21, 24-25.)  After her applications were denied initially and upon reconsideration (Tr. 56-60, 63-65), a hearing was held before an ALJ on July 23, 2007 (Tr. 320-64).  On August 31, 2007, the ALJ issued a decision denying Plaintiff's claims because she retained the residual functional capacity (hereafter "RFC") to perform her past sedentary work as an aircraft scheduler.  (Tr. 20-30.)  On February 7, 2008, the Appeals Council denied Plaintiff's request for review (Tr. 5-7), and the ALJ's decision became the Commissioner's final decision.  *See* 20 C.F.R. §§ 404.981, 416.1481.  As such, Plaintiff has exhausted her administrative remedies and the case is ripe for judicial review.  *See* 42 U.S.C. § 405(g).

On April 8, 2008, after receiving the Appeals Council's denial of her request for review, Plaintiff filed her complaint and the case was assigned to United States District Judge Tena Campbell.  (File Entry #3.)  Defendant then filed his answer on

June 16, 2008.  (File Entry #5.)  The parties consented to jurisdiction by a United States Magistrate Judge on July 1, 2008, and the case was referred to United States Magistrate Judge Samuel Alba pursuant to 28 U.S.C. § 636(c).

On August 11, 2008, Plaintiff filed her memorandum requesting that the Commissioner's decision be reversed or remanded.  (File Entry #14.)  Defendant filed his response memorandum on September 12, 2008.  (File Entry #15.)  On September 30, 2008, Plaintiff filed her reply memorandum.  (File Entry #16.)

## STANDARD OF REVIEW

The court reviews the Commissioner's decision "to determine whether the factual findings are supported by substantial evidence and whether correct legal standards were applied." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003); *accord Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).  The Commissioner's findings, "if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  "'Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."'"  *Doyal*, 331 F.3d at 760 (citations omitted).  The court may "'neither reweigh the evidence nor substitute [its] judgment for that of the agency.'" *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001) (citation omitted).

3

The court's review also extends to determining whether the
Commissioner applied the correct legal standards. *Qualls v.
Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000). Besides the lack of
substantial evidence, reversal may be appropriate where the
Commissioner uses the wrong legal standards or the Commissioner
fails to demonstrate reliance on the correct legal standards.
*See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994);
*Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993);
*Andrade v. Secretary of Health and Human Servs.*, 985 F.2d 1045,
1047 (10th Cir. 1993).

## ANALYSIS

Plaintiff challenges the ALJ's decision by arguing it is not
supported by substantial evidence and it is legally erroneous.
Specifically, Plaintiff argues (1) the ALJ erred in failing to
find Plaintiff has the severe impairments of cognitive disorder
and extreme obesity; (2) the ALJ erred when he failed to consider
and find Plaintiff's cognitive disorder condition meets Listing
12.02 for organic mental disorders; (3) the ALJ erred when he
failed to find Plaintiff is disabled under the "grids"; (4) the
ALJ erred when he ruled Plaintiff has no limitation in her mental
RFC; (5) and the ALJ erred in ruling Plaintiff is capable of
returning to her past relevant work as a cargo scheduler. The
court addresses each of these arguments in turn.

## A.  Severe Impairments

The court first examines Plaintiff's argument that the ALJ erred in failing to find Plaintiff has the severe impairments of cognitive disorder and extreme obesity.  At step two of the sequential evaluation process, Plaintiff bears the burden showing that her alleged depression and anxiety constitute "severe" impairments.  *See Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5 (1987); *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004).  Specifically, Plaintiff bears the burden to "demonstrate an impairment or combination of impairments that *significantly* limits the claimant's ability to do basic work activity." *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997) (citing 20 C.F.R. § 404.1520(c)) (emphasis added); 20 C.F.R. §§ 404.1520(a)(4)(ii) and (c), 404.1521(a), 416.920(a)(4)(ii) and (c), 416.921(a) (requirement for showing a severe impairment); *see also* SSR 96-3p (an impairment is not severe if it "has no more than a minimal effect on the ability to do basic work activities").  Although step two requires only a "de minimis" showing of a severe impairment, *see Hawkins*, 113 F.3d at 1169, "the claimant must show more than the mere presence of a condition or ailment."  *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997) (*citing Bowen*, 482 U.S. at 153); *see also Williamson v. Barnhart*, 350 F.3d 1097, 1110 (10th Cir. 2003) (the

mere presence of a condition, without proof that the condition
limits basic work activities, is insufficient for a step two
showing).

The ALJ found Plaintiff suffered from the severe impairments
of hypertension and degenerative disc disease.  (Tr. 22.)  The
ALJ examined whether Plaintiff suffered from a severe mental
disorder, but found that she does not.  (Tr. 22-23.)  The ALJ did
not address whether Plaintiff has the severe impairment of
obesity.  (Tr. 22-23.)[1]

## 1.  Obesity

The court first considers Plaintiff's argument that the ALJ
erred by not finding she has the severe impairment of obesity.[2]
Social Security Ruling (hereafter "SSR") 02-01p provides that the

---

[1]The ALJ also examined whether Plaintiff has the severe
impairments of lupus and Crohn's disease, which Plaintiff also
claimed on her disability application.  The ALJ found there has
been no confirmed diagnosis from an acceptable medical source for
either of these conditions; therefore, the ALJ found that
Plaintiff does not have the severe impairments of lupus and
Crohn's disease.  (Tr. 22.)

[2]Plaintiff is 5'4" tall and weighed 229 pounds on October 9,
2004 (Tr. 171), 230 pounds on October 20, 2004 (Tr. 194), 230
pounds on December 1, 2004 (Tr. 264), 246 pounds on April 29,
2005 (Tr. 305), 258 pounds on May 31, 2006 (Tr. 300), and 261
pounds on June 13, 2006 (Tr. 299).  At 229 pounds, Plaintiff's
body mass index (hereafter "BMI") was between 39 (obese) and 40
(extreme obesity); at 246 pounds, Plaintiff's BMI was 42 (extreme
obesity); and at 261 pounds, Plaintiff's BMI was 45 (extreme
obesity).  *See* Body Mass Index Table, adapted from the *Clinical
Guidelines on the Identification, Evaluation, and Treatment of
Overweight and Obesity in Adults: The Evidence Report.*  (Source:
National Institutes of Health website
http://www.nhlbi,nib.gov/guidelines/obesity/bmi tbl.pdf.)

SSA will find that obesity is a "severe" impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities.  *See SSR 02-01p.*

As stated above, the ALJ did not address this alleged severe impairment in his severe impairment analysis.  A review of the rest of the ALJ's decision reveals that the ALJ did consider Plaintiff's obesity in determining her RFC.  (Tr. 26.)[3]

As previously stated, the ALJ found Plaintiff suffered from two other severe impairments.  Because of this finding, the court need not address Plaintiff's argument that the ALJ erred in not including other severe impairments in his finding, because any such error would not require reversal.  Once the ALJ found Plaintiff had any severe impairment, he satisfied the analysis for purposes of step two; the ALJ's failure to find that additional alleged impairments were also severe would not in itself be cause for reversal.  *See Oldham v. Astrue*, 509 F.3d 1254, 1256-57 (10th Cir. 2007); *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).  "Under the regulations, once an ALJ finds that a claimant has at least one

---

[3]Indeed, the only specific reference to Plaintiff's obesity and how it may cause functional limitations that Plaintiff refers to in her pleadings is also the same evidence the ALJ refers to in his decision, where he states, "Dr. Hall noted the claimant was quite obese which was probably contributing to her complaints of fatigue and lack of energy."  (Tr. 26.)

severe impairment, he does not err in failing to designate other
disorders as severe at step two, because at later steps the
agency 'will consider the combined effect of all of [claimant's]
impairments without regard to whether any such impairment, if
considered separately, would be of sufficient severity.'"
*Barrett v. Astrue*, 2009 WL 2400267, at *2 (10th Cir. 2009)
(unpublished) (citing and quoting 20 C.F.R. §§ 404.1523,
416.945(e)); *see also Hill v. Astrue*, 289 Fed. Appx. 289, 2008 WL
3339174, at **2 (10th Cir. 2008) (unpublished).  Furthermore, as
discussed above, the ALJ considered Plaintiff's obesity in
assessing her RFC.

## 2.  Cognitive Impairment

Plaintiff also argues the ALJ erred in not finding she
suffered from a "severe" cognitive impairment at step two of his
analysis.  The ALJ addressed Plaintiff's alleged cognitive
impairment in his severe impairments analysis and found that
Plaintiff does not suffer from a "severe" cognitive impairment.

The ALJ's decision was based on his finding that Dr.
Conger's diagnosis and opinion were not supported by objective
clinical findings or by the record as a whole, and that, as a
conflicting opinion to that of Dr. Swaner, the ALJ found Dr.
Swaner's opinion to be supported by the record evidence.  (Tr.
23.)  The ALJ explained that Dr. Swaner's examination had been
performed two years before Dr. Conger's, and that no mental
impairment at all had been found, and that the record contained

no other reliable evidence of a mental impairment, resulted in the ALJ's rejection of Dr. Swaner's opinion that Plaintiff suffered from a long term cognitive impairment. (Tr. 23.) The ALJ supported his finding in noting that no other treating or examining physician of record concluded Plaintiff suffered from a mental impairment that would prevent her from engaging in work activity. (Tr. 23.) The ALJ also noted that Plaintiff's work as a cargo scheduler had ended not because of any cognitive or physical impairment, but because of a reduction in force. (Tr. 23.)

The ALJ thus adequately explained why he rejected Dr. Conger's opinion, which led to his finding that Plaintiff does not suffer from a "severe" mental impairment. In addition, the court's review of the record reveals that this finding is supported by substantial evidence.

At least three mental health professionals evaluated Plaintiff in this case. Two of these professionals, Dr. Swaner (an examining psychologist) and Dr. Egan (a reviewing psychiatrist), found, consistent with the ALJ's conclusions, that she did not have any medically determinable or diagnosable mental impairment (Tr. 185, 197), and they did not suggest or impose any mental limitations on Plaintiff's ability to work. *See generally Hamilton*, 961 F.2d at 1498-1500 (ALJ may rely on opinion of examining physician); SSR 96-6p (ALJ must consider findings of

State agency consultants as expert opinions on the issue of disability).

Further, when Dr. Swaner evaluated Plaintiff, Plaintiff denied any memory or social problems and said she "had no idea" why Social Security was having her mentally evaluated (Tr. 181). *See generally, e.g., Cruze v. Chater*, 85 F.3d 1320, 1326 (8th Cir. 1996) (Plaintiff's admissions can support the ALJ's decision).  Consistent with her admissions in this regard, Dr. Swaner's examination showed that she had an appropriate mood, positive affect, appropriate judgment and insight, normal speech, an adequate fund of knowledge, normal attention and concentration, normal reasoning abilities, normal memory, and adequate social presentation skills.  He noted that she was able to read and interpret a newspaper, copy a simple diagram, manage her finances, and follow simple and detailed instructions, and concluded that she had "no" mental health diagnosis or condition (Tr. 183-85).

The findings of Dr. Egan, who found that Plaintiff did not have a "medically determinable," much less "severe," mental impairment also supported the ALJ's conclusions.  (Tr. 29, 197.) *See* SSR 96-6p (explaining that ALJ must consider opinions of State agency consultants as expert opinions on the issue of disability under the Act).

Dr. Conger concluded that Plaintiff had "marked" and "extreme" mental deficits that would make it difficult to engage

in competitive employment.  (Tr. 23, 284-86.)  However, as the
ALJ discussed, these conclusions are contrary to other
substantial evidence in the record.  Examinations in October
2004, for instance, failed to support such limitations and
instead showed that Plaintiff was fully oriented and had an
appropriate mood, normal affect, clear thought processes, normal
memory, appropriate judgment, and good concentration.  (Tr. 155,
158, 159, 161, 163, 164, 172.)  As discussed above, Dr. Swaner's
examination revealed normal attention, concentration, and memory,
and Plaintiff overtly denied any difficulty with memory.  (Tr.
23, 179-85.)  Thus, the lack of functional limitations shown by
these examinations supported the ALJ's conclusion that she was
not as limited as alleged.  *See Walton*, 535 U.S. at 217-22
(stating claimant must show that his impairments caused
functional limitations so severe as to preclude any substantial
gainful activity for at least 12 consecutive months).

In addition, while Plaintiff was evaluated mentally for
purposes of obtaining benefits, there is no record evidence that
she ever sought or received any mental health treatment, which
further supported the ALJ's conclusions.  *See generally Bean* v.
Chater, 77 F.3d 1210, 1214 (10th Cir. 1995) (ALJ's decision
supported by "the fact that the first record of plaintiff
complaining of disabling back pain coincided with an examination
for social services for the purpose of obtaining benefits").

In light of the examination findings and the lack of evidence pertaining to allegations or treatment for a mental impairment prior to Dr. Conger's evaluation, the ALJ reasonably found that Dr. Conger's "extreme" limitations were not supported by the record, and that Dr. Conger's presumption that Plaintiff had suffered from a "long term cognitive impairment" was mistaken.  (Tr. 23.)  Thus, the ALJ properly accorded Dr. Conger's opinion, to the extent it indicated Plaintiff could not work, "diminished weight." (Tr. 23.)  *See generally* 20 C.F.R. § 416.927(d) (physician's opinions may be discounted if they are unsupported by or inconsistent with other substantial evidence of record); *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994) (even a "treating" physician's opinion may be rejected if his conclusions are not supported by the other evidence of record).  Furthermore, it was entirely within the ALJ's realm of discretion to find, based on the record as a whole, that Plaintiff's mental abilities were closer to those found by one examining mental health professional, Dr. Swaner (and Dr. Egan), than those indicated by another, Dr. Conger.  *See Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) (RFC determination is the responsibility of the ALJ, not a physician); *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (it is ALJ's responsibility to resolve conflicts in the evidence). That Dr. Swaner's evaluation was performed before Dr. Conger's does not change the outcome here, as the ALJ specifically noted

this fact in exercising his duty to weigh the conflicting evidence and the record as a whole and to ultimately make findings of fact.  (Tr. 23.)

Moreover, just as with her obesity discussed above, the record failed to show any functional limitations from a mental condition that would prevent her from performing a job as a cargo scheduler, which she had undisputedly performed for many years in the past.  *See generally Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997) ("the record contain[ed] no information that [claimant]'s physical condition ha[d] deteriorated since he last worked" and supported a finding of not disabled).  Thus, any arguable error by the ALJ in not finding her alleged mental impairment to be "severe" would be harmless and would not necessitate remand.  *See St. Anthony*, 309 F.3d at 691 ("[T]he party challenging the action below bears the burden of establishing that the error prejudiced the party"); *Fischer-Ross*, 431 F.3d at 733-35 (applying principle of harmless error to ALJ's step three determination); *Hawkins*, 113 F.3d at 1169 (citation omitted) (explaining that at step two, a claimant has the burden to "demonstrate an impairment or combination of impairments that significantly limits the claimant's ability to do basic work activity").

In conclusion, the court rejects Plaintiff's argument that the ALJ erred in failing to find Plaintiff's alleged cognitive

impairments and obesity are "severe" impairments under step two
of the sequential evaluation process.

### B.   Listing 12.02

Second, Plaintiff argues that she meets the A and B criteria
for Listing 12.02 for organic mental disorders, rendering her
disabled as a matter of law under Listing 12.02 for Organic
Mental Disorders.

Listing 12.02 requires that Plaintiff present medical
evidence of a medically determinable mental impairment that
satisfies both the diagnostic criteria under subsection A (the
A-Criteria) and the limitations set forth under subsection B (the
B-criteria).  *See* 20 C.F.R. pt. 404, subpt. P, app.1 § 12.02.
Specifically, the A-Criteria require that Plaintiff have brain
dysfunction causing disorientation to time or place, memory
impairment, perceptual disturbances (i.e., delusions or
hallucinations), personality changes, mood disturbances,
emotional outbursts, or a loss of IQ.  *See id.* at § A.  The
B-Criteria require at least two of the following:  "marked"
limitations in daily activities; "marked" limitations in social
functioning," "marked" limitations in concentration, persistence,
or pace; or repeated and extended episodes of decompensation.
*See id.* at § B.

Other than Dr. Conger's opinion, the substantial evidence of
record reveals that Plaintiff was always oriented, and that she
had normal mood and affect, normal memory, normal social skills,

normal attention and concentration, and no evidence of emotional outbursts, personality changes, IQ loss, or decompensation.  (Tr. 155, 158, 159, 161, 163, 164, 172, 179-85, 305.)

The only evidence even suggesting the possibility of mental limitations of the severity required to meet this Listing was that of Dr. Conger, which, as discussed at length above, was properly considered and discounted by the ALJ.  All of the legitimate evidence Plaintiff uses to make her argument that she meets this Listing is based on Dr. Conger's opinion.  Because, as discussed above, the court has upheld the ALJ's rejection of much of Dr. Conger's opinion, Plaintiff has failed to show that any evidence exists that comes close to meeting the requirements of this Listing. *See Yuckert*, 482 U.S. at 146, n.5 (it is claimant's burden to show that her impairment is one that is conclusively presumed to be disabling).  As a result, the court rejects Plaintiff's argument.

## C.  The "Grids"

Third, Plaintiff argues the ALJ erred when he failed to find Plaintiff is disabled under the "grids."  The "grids" apply only if the ALJ reaches the fifth step of the sequential evaluation process.  *See generally*, 20 C.F.R. § 416.920(a)(4) ("If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step."); *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir.1988) (explaining if the Commissioner reaches the fifth step, he may

15

use the "grids" to determine disability).  Thus, in making this argument, Plaintiff relies on her argument that the ALJ erred in determining Plaintiff could return to her previous work. Because, as discussed below, the court rejects that argument, Plaintiff's argument that she is disabled under the "grids" also fails.

### D.   RFC Assessment

Fourth, Plaintiff argues the ALJ erred when he ruled Plaintiff has no limitation in her mental RFC.  Again, Plaintiff relies on Dr. Conger's opinion in making this argument, and, as discussed above, the court has upheld the ALJ's rejection of that opinion.  Therefore, the court rejects Plaintiff's argument regarding her RFC assessment.

### E.   Past Relevant Work

Finally, Plaintiff also argues the ALJ erred in ruling at step four of the sequential analysis that Plaintiff is capable of returning to her past relevant work as a cargo scheduler.

At step four, a claimant will be found not disabled when it is found that she retains the RFC to perform a past job as she actually performed it or as it is generally performed in the national economy.  *See* SSR 82-62. Here, in determining whether Plaintiff could perform any of her past relevant work, the ALJ considered the record as a whole, which included work history reports setting out the specific demands of Plaintiff's past job as a cargo scheduler (Tr. 90, 118-19) and Plaintiff's testimony

on this issue (Tr. 347-50).  The ALJ also solicited testimony from a vocational expert (hereafter "VE") regarding Plaintiff's past work.  (Tr. 359-61.)

As the ALJ noted, the VE testified that Plaintiff's past job as a cargo agent required only sedentary exertion as she performed it[4] and would accommodate her additional limitations on sitting and standing (Tr. 359-61).  See SSR 82-61 (claimant will be found not disabled when she retains the RFC to perform a past job as she performed it or as generally performed in the national economy). Based on the VE's testimony regarding the classification of Plaintiff's past work, the ALJ properly determined that her prior job as a cargo scheduler did not exceed her RFC (Tr. 30).  *See Hayden v. Barnhart*, 374 F.3d 986, 991-92 (10th Cir. 2004) (ALJ properly relied on VE testimony at step four); *Doyal*, 331 F.3d at 761 (same).[5]

Plaintiff argues that the ALJ did not sufficiently articulate his findings with regard to the demands of her past work.  This argument lacks merit.  The Tenth Circuit heard and rejected a similar argument *Doyal.  See* 331 F.3d at 761.  In that

---

[4]The VE also testified, consistent with the ALJ's findings, that some cargo agent jobs were sedentary, as generally performed.  (Tr. 361.)

[5]7With regard to Plaintiff's argument that the ALJ's hypothetical to the VE did not contain all of her limitations, as discussed above, the ALJ was not required to include limitations in his RFC (or hypothetical) that he found were not credible or supported by the record.

case, the ALJ's decision stated the following in support of his
conclusion that the claimant could perform his past relevant
work:

> The vocational expert testified that the
> claimant's past relevant work as a house
> cleaner and sewing machine operator would be
> classified as light and unskilled, and her
> past relevant work as an activities director
> would be classified as light and
> semiskilled. The vocational expert indicated that
> the claimant's past relevant work as a house cleaner
> and sewing machine operator did not require lifting
> more than 20 pounds, walking for prolonged periods, or
> performing tasks requiring bilateral normal grip
> strength.

*Id.*  The Court found this was sufficient.  *Id.* at 761 ("The ALJ's
findings were adequate here to satisfy the step four requirements
articulated in *Winfrey* [*v. Chater*, 92 F.3d 1017, 1023 (10th Cir.
1996)]").

Here, quite similar to the ALJ's step four findings in
*Doyal*, the ALJ summarized the VE's testimony regarding the
demands of Plaintiff's past relevant work as a cargo scheduler,
stating, "[*i*]*n comparing the claimant's residual functional
capacity with the physical and mental demands of this work*, the
ALJ accepts the opinion of the VE and finds that the claimant was
able to perform her past work as an aircraft cargo scheduler . .
. ." (Tr. 30) (emphasis added).  As such, the ALJ's findings as
to Plaintiff's past work were more than sufficient under *Doyal*
and should be affirmed.

**CONCLUSION**

Based on the above analysis, **IT IS HEREBY ORDERED** that the Commissioner's decision is **AFFIRMED** because it is supported by substantial evidence and is free of reversible legal error.

DATED this 23rd day of September, 2009.

BY THE COURT:


_____
Samuel Alba
United States Magistrate Judge

19